UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x    **FOR PUBLICATION**
In re                                                        :
                                                             :
                                                             :
The 1031 Tax Group, LLC, et al.,                             :    Chapter 11
                                                             :    Case No. 07-11448 (MG)
                    Debtors.                                 :    Confirmed Case
------------------------------------------------------------x
                                                             :
GERALD A. McHALE, JR., not individually                      :
but solely in his capacity as Chapter 11 trustee             :
for THE 1031 TAX GROUP, LLC, et al.                          :
                                                             :
                    Plaintiff,                               :
                                                             :    Adv. Proc. No. 09-01129 (MG)
            -v-                                              :
                                                             :
BOULDER CAPITAL LLC, et al.                                  :
                                                             :
                    Defendants.                              :
                                                             :
------------------------------------------------------------x

**SUPPLEMENTAL MEMORANDUM OPINION GRANTING TRUSTEE'S MOTION
FOR PARTIAL SUMMARY JUDGEMENT**

*A P P E A R A N C E S:*

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
*Attorneys for the 1031Debtors Liquidation Trust*
437 Madison Avenue
New York, New York 10022
By:   Jonathan L. Flaxer, Esq.
      David J. Eiseman, Esq.
      Jacqueline G. Veit, Esq.

KLESTADT & WINTERS, LLP
*Attorneys for the Defendants*
292 Madison
Avenue, 17th Floor
New York, New York 10017
By:   Ian R. Winters, Esq.

1

THE GORDON LAW FIRM LLP
*Attorneys for the Defendants*
101 Federal Street, 17th Floor
Boston, Massachusetts 02110
By:   Stephen F. Gordon, Esq.
        Todd B. Gordon, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

The Court previously ruled that Gerald A. McHale, Jr., the former chapter 11 trustee of the debtors in this case and now the trustee of the 1031 Debtors Liquidation Trust (the "Trustee"), was entitled to partial summary judgment in the amount of $24,302,845.24 on a fraudulent conveyance claim arising from two transfers made by the debtors in these related bankruptcy cases (the "1031 Debtors")[1] to the Boulder defendants (collectively, "Boulder").[2] *In re 1031 Tax Group, LLC*, Case No. 07-11448 (MG), Adv. No., 09-01129 (MG), 2010 WL 3369944, at *1 (Bankr. S.D.N.Y. Aug. 27, 2010) ("August 27 Opinion"). While concluding that the Trustee had established his entitlement to summary judgment on liability with respect to a third transfer of $18,475,200 to Boulder on June 26, 2006 (the "Third Transfer"), the August 27 Opinion reserved judgment with respect to the amount the Trustee is entitled to recover for all or a portion of the Third Transfer because some of the facts were unclear. *Id.* at 26.

On October 21, 2010, the parties stipulated to certain facts regarding the Third Transfer. (ECF # 76.) The Court now determines that the Trustee is entitled to partial summary judgment in the amount of $3,340,261.22 in connection with the Third Transfer. The Third Transfer came from a commingled escrow account containing a total of $105,008.427.49. *Id.* The escrow

---

[1] The 1031 Debtors consist of the following entities: (1) Atlantic Exchange Co. LLC ("AEC"); (2) Security 1031 Services, Inc. ("SOS"); (3) Real Estate Exchange Co., LLC; (4) National Exchange Services QI, Ltd. ("NES"); (5) Investment Exchange Group, LLC; and (6) 1031 Advance Inc. Each of the 1031 Debtors (aside from AEC) filed a voluntary petition for chapter 11 relief on May 14, 2007. AEC filed its chapter 11 petition on June 11, 2007.

[2] The Boulder defendants are: (1) Boulder Capital LLC; (2) Boulder Columbus LLC; (3) Boulder West Oaks LLC; (4) Boulder Holding VI, LLC; (5) Boulder Holdings X, LLC; and (6) Roy S. MacDowell, Jr.

2

account contained funds derived from two sources: "tainted" funds of $18,985,211.41 transferred into the escrow account from a bank account of the 1031 Debtor, NES; and "clean" funds of $86,023,216.08 transferred into the escrow account from a loan from Greenwich Capital.[3] The Court determines that the Trustee is entitled to recover a pro rata allocation of the Third Transfer based on the percentage of tainted funds in the escrow account.[4]

## BACKGROUND

The Court assumes familiarity with the August 27 Opinion granting partial summary judgment. *See In re 1031 Tax Group, LLC*, 2010 WL 3369944. Only those facts bearing on the remaining issues raised by the June 26, 2006 Third Transfer are discussed in this opinion.

The facts surrounding the June 26, 2006 Third Transfer are undisputed. The genesis of the Third Transfer was a $77,625,000 loan by Wachovia-related entities (the "Wachovia Loan"), and an $18 million mezzanine loan by Boulder West Oaks (the "Boulder Loan"), that enabled Edward H. Okun ("Okun") to purchase the West Oaks Mall (the "Mall") through several Okun-owned entities. *See id.* at *3. In June 2006, Okun refinanced the Wachovia Loan and the Boulder Loan. On June 26, 2006, the debtor NES wire transferred $18,985,211.41 from an NES

---

[3]   The August 27 Opinion stated:

> While the Trustee forwards a loan document illustrating, and Boulder does not contest, that an additional $86 million was used [to] assist in the refinancing, the Trustee offers no evidence of the total sum deposited in LandAmerica's escrow account. Without this information, the Court cannot determine the ratio of tainted funds to clean funds required to calculate the appropriate judgment amount here. Thus, the Trustee has not demonstrated that it is entitled to 25% of the $18,475,200 Boulder received. Because of these infirmities, the Court cannot grant judgment for this amount. As demonstrated above, however, the Trustee is clearly entitled to summary judgment on the issue of liability for this transfer; the lone issue is with calculating the correct amount to award.

*In re 1031 Tax Group, LLC*, 2010 WL 3369944, at *26. To determine the tainted funds received by Boulder the relevant ratio should be the ratio of tainted funds to the total funds in the escrow account.

[4]   The computation is as follows: the percentage of tainted funds in the escrow account ($18,985,211.41/$105,008.427.49 = 0.180797, or 18%) x the amount of the Third Transfer ($18,475,200) = $3,340,261.22.

3

commercial checking account at Wachovia to LandAmerica, as escrow agent, in connection with Okun's refinancing of the Mall. *See id.* at *26. In addition to the NES funds, Greenwich Capital loaned Okun an additional $86 million that was also transferred into the LandAmerica escrow account. *Id.* The parties have now stipulated that the total sum deposited in the LandAmerica escrow account on June 26, 2006 was $105,008,427.49. (ECF # 76.) On the same day, LandAmerica transferred $18,475,200 from the escrow account to Boulder to repay the Boulder Loan, and transferred $77,625,544.30 to Wachovia to repay the Wachovia Loan. (Mem. in Supp. of Trustee's Mot. For Partial Summ. J. on Claim For Fraudulent Conveyance (the "Trustee Memorandum") at 15-16 (ECF # 28.).)

In determining the amount of the Third Transfer that should be avoided, the Trustee submits that a pro rata allocation of the commingled funds (between the tainted and clean funds) is warranted as a matter of law. Since a portion of the funds repaid to Boulder and Wachovia were tainted, to the extent the payments included funds derived from NES, the Trustee argues that the Court should award the Trustee the percentage of the Third Transfer that was derived from NES funds.[5] *Id.* at 16. In responding to the motion for partial summary judgment, Boulder did not respond to the Trustee's assertion that a pro rata allocation is appropriate in these circumstances.

The Court concludes that a pro rata allocation is appropriate. An analysis of case law and other legal authority weighs in favor of adopting such an approach. Accordingly, for the reasons discussed below, the Court concludes that, as a matter of law, the Trustee is entitled to summary

---

[5] The Trustee argued that summary judgment should be granted against Boulder Capital in the amount of $4,618,750 (25% of $18,475,000) on account of the Third Transfer to Boulder Capital. *See In re 1031 Tax Group, LLC*, 2010 WL 3369944, at *26; *see also* Trustee Memorandum at 16 (Boulder "received 25% of the escrowed funds, and therefore may be deemed to have received 25% of the NES funds.") But as explained in n.4, *supra*, the relevant inquiry is what percentage of the funds Boulder received from tainted funds in the escrow account—18%—resulting in the Court's calculation of $3,340,261.22.

judgment avoiding the pro rata portion of the Third Transfer derived from the NES funds contained in the commingled escrow account.

## DISCUSSION

### A. Law Favors Pro Rata Allocation of Commingled Funds

Courts have discretion when determining how to allocate commingled funds where a party has acted improperly in obtaining the funds. *See S.E.C. v. Infinity Grp. Co.*, 226 F. App'x 217, 218 (3d Cir. 2007) ("[T]he Courts of Appeals repeatedly have recognized that pro rata distribution of a defrauder's assets to multiple victims of the fraud is appropriate and that District Courts act within their discretion in approving such distributions."). Further, the Restatement of Restitution and Unjust Enrichment recognizes that courts must "make a rough, practical compromise between the competing interests of the restitution claimant and of the other persons with an interest in the fund." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 59 cmt. b (Tentative Draft No. 6, 2008). Particularly where there is evidence of fraudulent behavior, such as the kind Okun engaged in here, courts have discretion to determine the proper way to allocate the resulting harm. *Cf. S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002) (concluding that the courts retain the "equitable authority . . . to treat all the fraud victims alike (in proportion to their investments) and order a pro rata distribution."). Since Boulder received repayment of the Boulder Loan from a combination of "clean" and "tainted" funds, and no finding has been made that Boulder itself engaged in fraud, Boulder should only be required to repay a portion of the Third Transfer.[6] Accordingly, this Court retains discretion to determine what portion of the Third Transfer should be avoided as a fraudulent conveyance.

---

[6] The escrow agent, LandAmerica, was only a conduit. *See In re 1031 Tax Group, LLC*, 2010 WL 3369944, at \*18 ("It is clear that when an entity acts as a 'financial intermediary,' exerts no dominion over the funds, and has no discretion to use the funds as it wishes, that entity is a mere conduit and is not an 'initial transferee' for purposes of 11 U.S.C. § 550(a)(1).") (citing *Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine,*

5

Courts in the Second Circuit and elsewhere, in addition to treatises relating to restitution and trusts, have recognized the viability of a pro rata allocation of funds where such funds have been commingled and multiple parties have claims to the funds. The Trustee properly refers the Court to Restatement (Third) of Restitution and Unjust Enrichment which provides, in relevant part:

> When a commingled fund contains the property of multiple claimants, their interests in the fund and any product thereof are determined in the proportion that each claimant's traceable contribution bears to the balance of the fund at the relevant time.

*Id.* § 59(5) (Tentative Draft. No. 6, 2008). Further, Restatement (First) of Restitution § 213 lends support that the pro rata approach is equitable, especially in the context of wrongful mingling of funds. RESTATEMENT (FIRST) OF RESTITUTION AND UNJUST ENRICHMENT § 213 (1937). Section 213, titled "Mingling Money of Several Persons" provides:

> [W]here a person wrongfully mingles money of two or more persons, each of them is entitled to share in the mingled fund or in property acquired with the fund, in such proportion as his money bore to the whole amount of the fund.

*Id.* at § 213(1). Comment (a), titled, "Where no further disposition is made of the mingled fund," states:

> Where the money of two or more persons is wrongfully mingled in a fund, each of them is entitled in equity to claim a proportionate share of the mingled fund. Although the identity of the money of each can no longer be shown, each acquires an interest in the mingled fund. If no further disposition is made of it, it is immaterial whether they claim a share of or lien upon the fund.

*Id.* § 213 cmt. a.

---

*Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57-58 (2d Cir. 1997)).

6

In addition, the Restatement (Second) of Trusts supports a pro rata allocation of commingled funds. Section 202(1), comment (i), titled "Effect of withdrawals from the mingled mass," provides:

> Where the trustee wrongfully mingles trust funds with his individual funds in *one indistinguishable mass*, and subsequently makes withdrawals from the mingled fund, *the beneficiary is entitled to a proportionate share both in the part which remains and in the part which is withdrawn*, or at his option he is entitled to an equitable lien upon both parts to secure his claim for reimbursement.

RESTATEMENT (SECOND) OF TRUSTS § 202(1) at cmt. i (emphasis added).

While sitting as a district judge, Judge Learned Hand embraced the concept of pro rata allocation as an equitable manner of allocation of commingled assets. *See In re Walter J. Schmidt & Co.*, 298 F. 314, 316 (S.D.N.Y. 1923). In *Walter J. Schmidt*, Judge Hand rejected the so-called "rule in Clayton's Case" which adopted a "first-in, first out" concept in favor of a pro rata allocation of funds. In so holding, Judge Hand explained:

> The rule in Clayton's Case is to allocate the payments upon an account. Some rule had to be adopted, and though any presumption of intent was a fiction, priority in time was the most natural basis of allocation. It has no relevancy whatever to a case like this. Here two people are jointly interested in a fund held for them by a common trustee. There is no reason in law or justice why his depredations upon the fund should not be borne equally between them. To throw all the loss upon one, through the mere chance of his being earlier in time, is irrational and arbitrary, and is equally a fiction as the rule in Clayton's Case, supra. When the law adopts a fiction, it is, or at least it should be, for some purpose of justice. To adopt it here is to apportion a common misfortune through a test which has no relation whatever to the justice of the case.

*Id.* Judge Hand ultimately wrote a supplemental opinion overruling his adopted pro rata approach as he was bound by a Second Circuit decision that found that the appropriate method of distribution was to divide "the trust fund [so that] the last depositor shall be paid in full and so on until the fund is exhausted." *Id.* at 320. However, the approach espoused in *Walter J. Schmidt* was later adopted by the United States Court of Appeals for the District of Columbia Circuit in

7

the oft-cited case of *Ruddle v. Moore*, 411 F.2d 718, 718-19 (D.C. Cir. 1969). In *Ruddle*, the court used a pro rata approach to distribution of funds "swindled" by a "confidence man," based on Judge Hand's declaration in *Walter J. Schmidt* that the pro rata approach ensured equity as between the parties holding an interest in the trust. *Id.*

More recently, the Second Circuit recognized that the approach taken in *Ruddle* of pro rata allocation is an appropriate method to distribute wrongfully mingled funds. *See, e.g.*, *United States v. Benitez*, 779 F.2d 135, 139 (2d Cir. 1985) (approving the pro rata approach, stating that "[i]f [the court] were to apply the federal common law to decide the action, then the pro rata distribution approved in *Ruddle v. Moore* . . . would justify affirming the district court" in its decision to distribute property to claimants pro rata); *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1159 (2d Cir. 1986) ("A second approach [to distribution] is to consider 'traceable proceeds' to be a pro rata share of any withdrawal from the account or of any asset purchased with such withdrawal, the share determined by the ration of the [total] tainted deposit to the funds in the account immediately after the deposit."); *S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002) ("Courts have favored pro rata distribution of assets where, as here, the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders."); *see also Commodity Futures Trading Comm'n v. Equity Fin. Grp., Inc.*, Case No. Civ.04-1512 RBK AMD, 2005 WL 2143975, at *23 (D.N.J. Sept. 5, 2005) (receiver declining to adopt a tracing approach in favor of a pro rata distribution because it would be "inequitable to allow those claimants who are able to trace their funds to recover at the expense of other similarly situated claimants when such claimants are only able to trace their assets as a result of the fortuitous fact that the defrauders spent the money of other victims first.") (internal quotation marks and citation omitted).

**B. Courts Have Applied the Pro Rata Approach in Ponzi Scheme Cases**

Courts have also distributed funds to parties based on their proportionate share of the funds where such funds were misappropriated in a Ponzi scheme. *See S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002) ("Courts have favored pro rata distribution of assets where, as here, the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders."); *S.E.C. v. Elliot*, 953 F.2d 1560, 1570 (11th Cir. 1992) (adopting pro rata distribution method to creditors where individual engaged in a Ponzi scheme); *Ruddle v. Moore*, 411 F.2d 718, 718-19 (D.C. Cir. 1969) (distributing funds pro rata to individuals who were swindled in a Ponzi scheme where commingled funds were put into a single account); *Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of New York*, 577 F. Supp. 2d 1023, 1049-50 (N.D. Ill. 2008) (citing *Ruddle* and finding that party "has shown that a court of equity may have had the power, in its discretion, to order a pro rata distribution as between it and the newer creditors").

The Court previously concluded that the fraud in this case was a Ponzi scheme. *See In re 1031 Tax Group, LLC*, 2010 WL 3369944, at *21 (stating that "the funds at issue here were clearly transferred in connection with and in furtherance of Okun's Ponzi scheme and Boulder does not dispute that the transfers here were made in connection with Okun's overall scheme").

## CONCLUSION

Adopting the pro rata method of allocation of the commingled funds in the LandAmerica escrow account, the Court concludes that the Trustee is entitled to partial summary judgment against Boulder for the pro rata share of the Third Transfer that was derived from NES funds. Therefore, the Trustee is entitled to recover $3,340,261.22 in respect of the Third Transfer, and

$24,302,845.24 in respect of the other two transfers (as determined in the August 27 Opinion), along with prejudgment interest.[7]

DATED: November 1, 2010
New York, New York

     /s/Martin Glenn
MARTIN GLENN
United States Bankruptcy Judge

---

[7] The Trustee is entitled to recover prejudgment interest with respect to all three transfers. The basis for computing prejudgment interest is the subject of a separate opinion also entered today, November 1, 2010.